1  John R. Brydon (Bar No. 83365)
2  Paul A. Peters (Bar No. 148497)
   Angela Martin (Bar No. 238426)
3  **DEMLER, ARMSTRONG & ROWLAND, LLP**
   101 Montgomery Street, Suite 1800
   San Francisco, CA 94108-2812
4  Telephone:  (415) 949-1900
   Facsimile:  (415) 354-8380
5  Email:      *bry@darlaw.com*
               *pap@darlaw.com*
6              *anm@darlaw.com*

7  Attorneys for Defendants
   FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN and
8  FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY

9

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  PATRICIA CRISCO, et al.,                Case No.:  3:19-cv-07320-DMR

14                     Plaintiffs,          ————————————————

15  v.                                      (Sonoma County Sup. Ct. No. SCV-
                                            265307)
16  FOREMOST INSURANCE
    COMPANY GRAND RAPIDS,                   **DEFENDANTS' OPPOSITION TO**
17  MICHIGAN, et al.,                       **PLAINTIFFS MOTION FOR**
                                            **PARTIAL SUMMMARY**
18                     Defendants.          **JUDGMENT**

19                                          Date:   November 12, 2020
                                            Time:   8:30am
20                                          Crtrm: 12, 19th Floor

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

II.   MATERIAL STIPULATED FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

III.  PLAINTIFFS HAVE FAILED TO ESTABLISH THE CLAIM AT
      ISSUE FALLS WITHIN THE COVERAGE PROVIDED BY THE
      FOREMOST POLICIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.  The Policy Language Expressly Limits Policy Language to Direct,
          Physical Loss to Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.  California Law Requires Tangible, Physical Alteration of the
          Covered Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C.  The Out-of-State Cases Cited by Plaintiffs Do Not Apply . . . . . . . . . . . . . 10

IV.   GOVERNMENT ACTION EXCLUSION & CAUSATION  . . . . . . . . . . . . . . 13

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

i

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Accord Washington Mut. Bank v. Jacoby,* 180 Cal.App.4th 639 (2009) ........................................ 6

4

*AFLAC Inc. v. Chubb & Sons, Inc.* (2003) 260 Ga.App. 306 ....................................................... 5

5

6

*American Guarantee & Liability Ins. Co. v. Ingram Micro., Inc.,* Case No. CIV99-185 TUC
    ACM, 2000 U.S. Dist. LEXIS 7299, *7 (D. Ariz. April 18, 2000) ......................................... 12

7

8

*Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 47 Cal.4th 302,
    311-312 (2009) ...................................................................................................................... 15

9

*Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) .................................... 11

10

*Farmers Ins. Co. v. Trutanich*, 858 P.2d 1332, 1335 (Or.Ct. App. 1993) ................................... 11

11

*Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 51 Cal.2d 558, 563-564 (1959) .............. 15

12

13

*General Mills, Inc. v. Gold Medal Ins.,* 622 N.W.2d 147, 152, 2001 Minn.App, LEXIS 139
    (Minn.Ct. App. 2001) ............................................................................................................. 11

14

*Hughes v. Potomac Ins. Co.,* 199 Cal.App.2d 239 (1962) ........................................................ 7, 8

15

*Intel. Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (1991) ....................... 4, 13

16

*J&J Pumps, Inc. v. Star Ins. Co.* 795 F.Supp.2d 1023, 1028 (2011) ............................................. 6

17

18

*Matzner v. Seaco Ins. Co.*, Case No. 96-0498-B, 1998 Mass.Super.LEXIS 407, *13  (Mass.
    Cmmw. August 1, 1998) ......................................................................................................... 11

19

*Mellin v. Northern Sec. Ins. Co.*, 167 N.H. 544, 548 (2015) ..................................................... 11

20

21

*Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 667 (1995) ................................. 4

22

*Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed.Appx. 823, 825-27 (3d Cir. 2005) .................... 11

23

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* 187 Cal.App.4th 766,
    778-779 ..................................................................................................................... 6, 12, 15

24

25

*Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 493, 509 S.Ed.2d 1 (1998) ................. 12

26

*Pfeiffer v. General Ins. Co.,*185 F.Supp.605 (N.D. Cal. 1960) ................................................ 7, 8

27

*Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.,*  311 F.2d 226, 236 (3d Cir.
    2002) ...................................................................................................................................... 11

28

*Prudential Prop. & Cas. Co. v. Lillard-Roberts,* case no. CV-01-1362-ST, 2002 U.S.Dist. 20387, *27 (Or. June 18, 2002.) ................................................................................. 11

*Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300-301 (Ct.App. Minn. 1997) ................................................................................................................ 11

*Shell Oil Co. v. Winterthur Swiss Ins. Co.*,12 Cal.App.4th 715, 755 (1993)............................... 15

*Simon Marketing Inc. v. Gulf Ins. Co.,* 149 Cal.App.4th 616, 623 (2007) ................................. 1, 5

*State Farm Fire & Casualty Co. v. Von Der Leith*, 54 Cal.3d 1123, 11313-1132 (1991)............ 15

*Strickland v. Fed. Ins. Co.* 200 Cal.App.3d 792, 800 (1988) ..................................................... 7, 8

*Sullivan v. Standard Fire Ins. Co.*, 2008 Del. LEXIS 66, *7, 956 A.2d 643 (De. 2008) ............. 11

*TRAVCO Ins. Co. v. Ward,* 715 F.Supp.2d 699, 709 (E.D. Va. 2010) ....................................... 11

*Wakenfern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524, 968 A.2d 724.......... 13

*Ward Gen'l Ins. Servs., Inc. v. Employers Fire Ins. Co.,* 114 Cal.App.4th 548, 552 (2003) ................................................................................................4, 5, 6, 8, 11, 12, 13

*Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39, 437 P.2d 52 ............. 11

*Ziello v. Sup. Ct. (First Fed'l Bank of Calif.)*, 36 Cal.App.4th 321, 329 (1995) ........................... 6

Statutes

California  Health and Safety Code §17920.3(a) .......................................................................... 3

Rules

FRCP 56(a) ................................................................................................................................... 4

Defendants Foremost Insurance Company Grand Rapids, Michigan and Foremost Property and Casualty Insurance Company (collectively hereinafter, "Foremost" or "Defendants") hereby oppose plaintiffs' motion for partial summary judgment as follows:

## I.   **INTRODUCTION**

This motion presents a straightforward, purely legal question of applying well-defined contract terms to stipulated facts.  Foremost issued insurance policies providing coverage for "direct, sudden and accidental physical loss to" plaintiffs' specified mobile homes.  Under California law, a "physical loss to" covered property only occurs when that property is itself actually, tangibly damaged or, more specifically, where there has been "a distinct, demonstrable, physical alteration of the property" itself.  (*Simon Marketing Inc. v. Gulf Ins. Co.,* 149 Cal.App.4th 616, 623 (2007).)  Plaintiffs stipulate that there was no physical damage to their mobile homes.  Therefore, there was no covered loss and plaintiffs' motion should be denied.

Plaintiffs' claim coverage not for physical damage to their mobile homes but, rather, because damage to a *third party's* property, which was not covered by Foremost, resulted in plaintiffs' property being deemed unfit for use.  However, the relevant coverage only applies to repairs or replacement of *covered* property that is actually physically damaged.  Since plaintiffs stipulate that their covered property was not damaged, there would be no coverage for plaintiffs' claims.

## II.   **MATERIAL STIPULATED FACTS**

Two undisputed facts resolve this motion:  (1) Foremost's policies require "physical loss to" covered property for Coverage A to apply, and (2) plaintiffs stipulate that there was no "physical loss to" their mobile homes.  That said, the context and factual details are as follows:

Foremost issued homeowners' insurance policies to each plaintiff using the same material insuring agreement:

**SECTION I – Your Property Coverages**

We provide insurance only for insured losses that occur during the
Policy Period shown on the Declarations Page.

**Coverage A – Dwelling**

We insure:

1.      Your dwelling that is described on the Declarations Page.
* * *
3.      Any structure you own that is attached to your dwelling, other
than a structure attached only by a fence, utility line or similar
connection.
* * *

**SECTION I – Insured Perils**

*We insure risk of direct, sudden and accidental physical loss to the
property described in Coverage A – Dwelling*, Coverage B – Other
Structures and Coverage C – Personal Property unless the loss is
excluded elsewhere in the policy.

(Facts 4-5; *quoting* the Policies, *e.g.*, Exh. 1 at FPCCRI 809 and 814.[1])

Plaintiffs are the individual owners of ten mobile homes previously located
on leased spaces in the Journey's End Mobile Home Park (the "Park"). The Park is
owned by 3573 Mendocino Avenue Associates, LLC.  (Facts 2, 6.)

On October 9, 2017, the Sonoma Complex Fire (the "Fire") destroyed 117 of
the mobile homes in the Park, but not plaintiffs' mobile homes.

*Plaintiffs stipulate for purposes of these cross-motions that there was no
physical damage to their mobile homes.*  (Fact 11.)

The Fire did destroy the electric, gas, sewer, and water infrastructure serving
the Park.  (Facts 7, 12.)  The damaged utility infrastructure was owned and
controlled by the Park owners.  (Fact 12.)  Plaintiffs' mobile homes lost access to
running water, sewage, electricity, gas, and heat.  (Fact 13.)

After the Fire, the City of Santa Rosa posted notices on plaintiffs' mobile
homes prohibiting occupancy "until approved as complying" with State law.  (Fact
14; Exh. 11.)  On November 9, 2017, the Sonoma County Department of Health

---

[1] The referenced Exhibits are attached to the Stipulation of Facts Applicable to Cross-Motions
for Summary Judgment or Partial Summary Judgment on Contract Issues.  The paragraphs of the
stipulation are referred to as "Fact(s) [#]."  The Policies are authenticated at Facts 4-5.

Services Public Health Division wrote plaintiffs that their mobile homes were "substandard structures" due to lack of gas, electricity, potable water, and a public sewer/septic connection at the Park in violation of California Health and Safety Code §17920.3(a), (5)-(6), (10), and (14)-(15). (Fact 15; Exh. 12.) On January 24, 2018, the California Dept. of Housing and Community Development ("HCD") issued a report concluding that although the remaining 44 mobile homes in the Park, including plaintiffs' ten, did not sustain fire damage, they were "uninhabitable due to the destruction of the park infrastructure." (Fact 16; Exh. 13 at p. 1.)

The Park owners did not restore the Park's utilities or complete remediation to permit re-occupancy by plaintiffs. (Fact 17.) Rather, on October 21, 2019, the Park owners filed a request with the City of Santa Rosa to close the Park and to redevelop the property to a different use. The City approved the Application on January 14, 2020 by resolution No. RES-2020-004. (Fact 19; Exh. 14.)[2] Plaintiffs were required to remove their mobile homes as part of the formal Park closure process. (Fact 24.) Plaintiffs then elected instead to transfer title to their mobile homes to others. (*Id.*)

Plaintiffs agree that insurance benefits under Section I, Coverages *B*, *C*, and *D*, and under Section *II* of the policies, are not at issue. (Fact 26.) Plaintiffs' sole claim under Section I Coverage A of the Foremost policies, asserting that neither the policies nor California law require any "tangible injury to the physical structure" to qualify as "physical loss to" the property, so long as the "dwelling" has been deemed not fit for occupancy. (Fact 25.) However, as explained below, the policy language itself *does* require this, and California interprets such language to require tangible injury to the physical structure before this coverage applies.

---

[2] The Relocation Impact Report prepared by counsel for the owners to facilitate the Park's closure states that, because the 44 unburned coaches were not damaged, the owners were not entitled to insurance coverage. (*E.g.* Exh. 14 at p. 2-3 of annexed Relocation Impact Report.)

### III.   PLAINTIFFS HAVE FAILED TO ESTABLISH THE CLAIM AT ISSUE FALLS WITHIN THE COVERAGE PROVIDED BY THE FOREMOST POLICIES

In insurance disputes, the insured bears the burden at trial to "prove that an event is a claim within the scope of basic coverage."  (*Intel. Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (1991).)  If an insured cannot meet this burden the defendant is entitled to summary judgment.  (FRCP 56(a).)

Foremost's Coverage-A only covers "direct, sudden and accidental physical loss to" covered property.  (Fact 5; e.g. Exh. 1 at FPCCRI at 814.)  Plaintiffs stipulate that there was no physical loss to their homes.  (Fact 11.)  Therefore, plaintiffs cannot establish that their claim falls within the basic scope of coverage.

#### A.   *The Policy Language Expressly Limits Coverage to Direct, Physical Loss to Property*

As plaintiffs acknowledge, and yet somehow disregard, the first step in insurance policy interpretation is to look at the plain language of the policy itself. "The 'clear and explicit' meaning of [insurance policy] provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation . . .."'  (*Montrose Chemical Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 667 (1995) [citations omitted]; *see also Ward Gen'l Ins. Servs., Inc. v. Employers Fire Ins. Co.,* 114 Cal.App.4th 548, 552 (2003) ["If the contractual language is clear and explicit, it governs."].)  Courts will not strain their interpretation to "create ambiguity where none exists", and "[t]he fact that a term is not defined in the policies does not make it ambiguous."  (*Ward, supra,* 114 Cal.App.4th at 552-553.)

Foremost's policies expressly grant property coverage only as follows:

**SECTION I – Insured Perils**
*We insure risk of direct, sudden and accidental physical loss to the property described in Coverage A – Dwelling*, Coverage B – Other Structures and Coverage C – Personal Property unless the loss is excluded elsewhere in the policy.

(Fact 5; *e.g.* Exh. 1 at FPCCRI 814 [italics added].)

Coverage cannot apply absent "*physical loss to the [covered]*

-4-

*property,*" regardless of the cause.  Two aspects of this grant of coverage clause are controlling:  there must be a "physical loss" and it must be "to" covered property.  As for the "physical" component, it is well settled in this state that, under policies like Foremost's, the term "physical" is not ambiguous, and is applied according to its ordinary and popular definition: "*of or relating to natural or material things.*"  (*Ward, supra*, 114 Cal.App.4th at 553, *citing* Meriam-Webster, Webster's Third New International Dictionary 1706 (3rd ed. 2002); italics added.)  As for the preposition "to," it links the "physical loss" requirement to the covered property.  Thus, "the threshold requirement for recovery under a contract of property insurance is that *the insured property has sustained physical loss or damage*."  (*Simon Marketing Inc. v. Gulf Ins. Co., supra,* 149 Cal.App.4th at 623; italics added.)

California courts have consistently explained that:

> "[T]he loss needs to be 'physical', given the ordinary meaning of the term, [which] is 'widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact, unaccompanied by *a distinct, demonstrable, physical alteration of the property*.'"  (Couch on Insurance, at p. 148-81, fns.  omitted.)

> A direct physical loss "*contemplates **an actual change in the insured property** then in a satisfactory state, occasioned by accident or other fortuitous event *directly upon the property* causing it to become unsatisfactory for future use or requiring that repairs be made to make it so.*"  (*AFLAC Inc. v. Chubb & Sons, Inc.* (2003) 260 Ga.App. 306 [581 S.E.2d 317, 319] [remediation costs converting computer systems from two-digit to four-digit date recognition capability not a covered risk under all-risk property insurance].)  The word "direct" used in conjunction with the word "physical" indicates the change in the insured property must occur by the action of the fortuitous event triggering coverage.  In this sense, 'direct' means ''[w]ithout intervening persons, conditions, or agencies; immediate.' [Citation]' (*Ibid.)  **For loss to be covered, there must be a 'distinct, demonstrable, physical alteration' of the property.'**  (10A Couch on Insurance, *supra*, §148:46, p.148-81.)

(*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* 187 Cal.App.4th 766, 778-779 [italics, bold and underline added]; *see also Ward, supra,* 114 Cal. App. 4th at 556-557, 558 ["We see no reason to attribute different meanings to 'direct physical loss,' as used in first party coverage provisions and 'physical damage to tangible property,' as used in third party coverage provisions."]; *J&J Pumps, Inc. v. Star Ins. Co.* 795 F.Supp.2d 1023, 1028 (2011) ["The requirement that the loss be 'physical' . . . is widely held to exclude losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer where the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property."].)[3]

Thus, Foremost's "Insured Perils" coverage condition requires actual "physical loss to" the insured's covered policy before coverage can apply. Physical loss to the property of others, even around or adjacent to the insured "dwelling," does not trigger coverage. Here, plaintiffs stipulate that they are not seeking coverage for physical damage to their tangible, covered property. Rather, they seek compensation for the inability to use their undamaged property. This is

---

[3] Plaintiffs cite *Ziello v. Sup. Ct. (First Fed'l Bank of Calif.)*, 36 Cal.App.4th 321, 329 (1995) for the proposition that property insurance does not insure property, but "is a personal contract indemnifying the insured against loss." However, such reasoning was not asserted by the *Ziello* court to re-write the language or purpose of the property insurance policy before it, but rather to distinguish **who** was entitled to benefits. In *Zeillo*, plaintiff's homeowner policy listed her and her lender as an insureds. She added earthquake coverage, to which the insurer added the lender as a loss payee, unbeknownst to plaintiff, even though none of the mortgage documents required earthquake insurance. (*Id.* at 324-325.) An earthquake damaged the house. (*Id.* at 325.) The carrier then issued insurance payments jointly to the homeowner and lender, and the homeowner sought declaratory relief that the lender was not entitled to benefits. (*Id.* at 325.) In explaining why the mortgage term assigning any "judgment or settlement" payment did not give the lender a right to insurance proceeds, the court explained that: "Payment on an insurance contract is neither a judgment nor a settlement; it is simply payment on a contract . . . fire [or other hazard] insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured . . .. Borrower did not assign to lender [in mortgage documents] her right to receive benefits of her earthquake insurance policy." (*Id.* at 329.) *Ziello* was distinguishing *who* has contract rights, not the purpose of insurance. (*Accord Washington Mut. Bank v. Jacoby,* 180 Cal.App.4th 639 (2009) [property buyer was not a "successor-in-interest" to the named insured entitled to insurance proceeds for pre-purchase fire].)

not a covered loss under Coverage A as defined by the Foremost policies. The policies require physical property damage to the insured dwellings and in this case it just did not happen.

### B. California Law Requires Tangible, Physical Alteration of the Covered Property

Contrary to California case law defining "physical loss to" property, plaintiffs attempt to insert ambiguity into the policy language. They cite a number of cases that do not seek to define "physical loss." Rather, each of the California cases plaintiffs cite define what *covered property* must suffer a "physical loss." Plaintiffs mistakenly rely on *Pfeiffer v. General Ins. Co.,*185 F.Supp.605 (N.D. Cal. 1960), *Hughes v. Potomac Ins. Co.,* 199 Cal.App.2d 239 (1962), and *Strickland v. Fed. Ins. Co.* 200 Cal.App.3d 792, 800 (1988) for the proposition that "a structure need not be physically or structurally damaged for it to constitute 'physical loss,' if it becomes uninhabitable." (PLF Mtn, 14:11-13.) That is *not* what these cases hold.

In *Pfeiffer,* the insureds sought the costs to stabilize land beneath their residence after a landslide. The sole issue facing the court was as follows:

> "Does an insurance policy which insures a dwelling against the perils of a landslide cover the land underlying the house, as well as the house itself? . . . *If 'dwelling' encompasses such land then plaintiffs are entitled to recover in full*. But if 'dwelling' includes only the residence structure itself and not the land upon which it is situated, then plaintiffs are entitled only to have their home restored to its condition prior to the damage incurred because of the landslide."

(*Pfeiffer, supra,*185 F.Supp. at 606-607.)

The *Pfeiffer* court found that the term "'dwelling' or 'house' carries with it by necessary implication the real estate upon which the building is situated and so much of the surrounding real estate as is necessarily incident to the use of the premises as dwelling," therefore, "the land underlying the house must be encompassed within the word 'dwelling.'" (*Id.* at 607-608.) The court determined that the underlying soil – *which was the only part that was physically*

1   *damaged* – was encompassed in the definition of "dwelling."  Thus, because the

2   "dwelling" was covered, stabilizing the soil, which under the particular policy

3   language at issue was deemed part of the "dwelling," was also covered along with

4   the residence structure.

5          S*trickland* and *Hughes* held likewise.  Both courts found the term

6   "dwelling" ambiguous and interpreted the term to include the soil underlying each

7   insured structure.  Thus, damage to the underlying soil *was physical damage to the*

8   *"dwelling," i.e.*, covered property.  (*Strickland, supra,* 200 Cal.App.3d at 795-796

9   and 800 [underlying soil was part of the insured "dwelling," along with the

10  building, such that costs of eliminating risk of continuing or future physical

11  damage was covered under policy providing coverage for earth movement];

12  *Hughes, supra,* 199 Cal.App.2d at 249 [failure to mention underlying soil made the

13  term "dwelling" or "dwelling building" ambiguous, and; *incorrectly* reasoning that

14  limiting "dwelling" solely to the building would render that policy "illusory"].)

15         California law does not hold that a building deemed "uninhabitable" for *any*

16  reason has suffered "physical loss."  Rather, the law remains that physical damage

17  to covered property is required to trigger coverage, and the *Pfieffer/Hughes* line of

18  cases agree---they simply defined "dwelling" to include the land beneath the

19  dwelling building and the physical damage was to that land.  (*See also Ward,*

20  *supra,* 114 Cal. App. 4th at 558 (distinguishing *Hughes* on this basis.)

21         Further, while there is authority for the proposition that *unless otherwise*

22  *stated*, the term "dwelling" may include the structure as well as underlying soil,

23  that is not the case here.  (*See Hughes, supra,* 199 Cal.App.2d at 249 [The

24  inclusion of underlying land *only applies "in the absence of a [policy] provision*

25  *specifically limiting coverage"*].)  The Foremost policies specify that the insured

26  "dwelling" is that "described on the Declarations Page[s]" of plaintiffs' policies,

27

28

-8-

which in each case includes _only_ their mobile home and nothing else.[4]   The

policies further distinguish the "dwelling" from the "grounds immediately adjacent

thereto" by expressly, separately including both as distinct elements in the defined

term "**premises**," the definition of which also indicates that for Section I property

damage coverage, the "**premises**" does not include "land" "rented to the insured."

(_See, e.g.,_ Exh. 1 at FRCCRI 808.)[5] The land beneath and around plaintiffs' mobile

homes was owned by the Park owners and rented to plaintiffs.  (Fact 6.)  Further,

the only property coverage provided for damages to a "**premises**" is under

Coverage D, which provides for limited "loss of use" benefits if "an insured loss

make your **premises** not fit to live in."[6]   The contrast between this express grant

[4] The Foremost policies state that the "Dwelling" is "Your dwelling that is described on the Declarations Page" excluding other structures "attached only by . . . utility line." (E.g. Exh. 1 at FPCCCRI 809.)  Each declarations page provides the dwelling location, the specific lot address within the Park, and the "dwelling information" which states the model, year, serial number, and size of the specific mobile home.  (Fact 29, Exh. 1-10, e.g. Exh. 1 at FPCCRI at 790.)

[5] The Foremost policies define the term "**Premises**" as follows (_see, e.g._ Exh. 1 at FRCCRI 808):

> **Premises** means:
> 1. The dwelling that is described in the Declarations Page.
> 2. The other structures, including side-walks, driveways or other private approaches that serve your dwelling.
> 3. The grounds immediately adjacent to your dwelling and other structures.
> For purposes of SECTION II " Your Liability Coverages, premises also means:
> 1.    Vacant land, other than farm land, owned by or rented to any of you.

[6] This policy language, under Section I, Coverage D for "Additional Living Expenses," is as follows:

> If an insured loss makes your **premises** not fit to live in, we will pay the actual, reasonable and necessary increase in your living expense to maintain your normal standard of living while you live elsewhere. We will pay for the shortest time needed:
>
> 1. To repair or replace the damaged property.
>
> 2. For you to permanently relocate.
>
> The total amount we will pay will not exceed the Amount of Insurance described on the Declarations Page for Coverage D – Additional Living Expense.
>
> _If damage caused by an Insured Peril occurs at a neighboring **premises**, we will pay reasonable additional living expenses for up to two weeks should civil authorities prohibit occupancy of your **premises**._
>
> This period of time will not be limited by the expiration of this policy.

of coverage for damage to a "**premises**" in Coverage D, and the restriction of Coverage A to "[y]our dwelling" and "[a]ny structure *you own* that is attached to your  dwelling," further clarifies that damage to the property of others or the grounds on which the insured mobile home sits are not covered under Coverage A. Property owned by others is plainly not covered and the land beneath plaintiffs' homes is "owned by others" (and is also not part of a covered "dwelling").

Thus, Foremost's policies *cannot* be read to cover the Park's separate utilities and infrastructure as part of the insured "dwelling[s]."  In fact, the policies are clear that neighboring property owned by others is expressly *not covered property,* and damage thereto cannot be deemed a covered "physical loss" to plaintiffs' dwellings even if it results in the property that *is* covered becoming uninhabitable.

### C.   The Out-of-State Cases Cited by Plaintiffs Do Not Apply

The foreign cases cited by plaintiffs are equally inapposite.  None apply California law, and *none* hold that there was "physical loss to" covered property solely because the property was deemed uninhabitable.  The cases either define "physical loss" to include the contamination of covered property by toxins or odors impacting the fitness of covered property and/or apply reasoning or law that is inapplicable or has been rejected in California.  For example, Plaintiffs cite to a number of cases finding that where a covered building is contaminated by asbestos, chemicals or strong odors to such an extent that it is unfit for use, there has been a direct physical loss to property.  *However, in each of those cases the insured property has been infiltrated by the unhealthy or undesirable vapor, toxin or bacteria.  (See, e.g.,  Port Auth. of New York & New Jersey v. Affiliated FM Ins.*

---

*We will not pay for expense due to the cancellation of a lease or agreement.*

(Fact 5, *e.g.* Exh. 1 at FRCCRI 811-812; italics added.)

The Foremost policies also expressly state that structures attached to a dwelling only by a utility line are not covered property.  (*E.g.* Exh. 1, FPCCRI at 809.)

1  *Co.,* 311 F.2d 226, 236 (3d Cir. 2002) ["'[P]hysical loss or damage' occurs only if

2  an actual release of asbestos fibers . . . has resulted in *contamination of the*

3  *property* such that its function is nearly eliminated or destroyed. . ."] [emphasis

4  added]).[7]

5

6  ――――――――――
[7] *See also Prudential Prop. & Cas. Co. v. Lillard-Roberts,* case no. CV-01-1362-ST, 2002

7  U.S.Dist. 20387, *27 (Or. June 18, 2002.) ["Because the *[insured] house has visible mold* which may not be removeable, *the house has suffered* 'distinct and demonstrable' damage."] [emphasis

8  added]; *Western Fire Ins. Co. v. First Presbyterian Church*, 165 Colo. 34, 38-39, 437 P.2d 52 ["[B]ecause of the accumulation of gasoline around and under the church building *the premises*

9  *became* so infiltrated and saturated as to be uninhabitable, making further use of the building highly dangerous . . . equates to a direct physical loss."] [emphasis added]; *Farmers Ins. Co. v.*

10  *Trutanich*, 858 P.2d 1332, 1335 (Or.Ct. App. 1993) [Under Oregon law, pervasive "odor" from a methamphetamine lab is "'physical,' because *it damaged the house.*"] [citations omitted;

11  emphasis added]; *TRAVCO Ins. Co. v. Ward,* 715 F.Supp.2d 699, 709 (E.D. Va. 2010) [Where drywall in the home *released sulfuric acid into the home* deeming the home uninhabitable, but

12  the drywall itself intact and functioning, there was physical loss.] [emphasis added]; *Sullivan v. Standard Fire Ins. Co.*, 2008 Del. LEXIS 66, *7, 956 A.2d 643 (De. 2008) ["Mold spores and

13  other bacteria associated with mold undoubtedly have a 'material existence,' even though they are not tangible or perceptible by the naked eye.  Therefore, *mold contamination constitutes a*

14  *'physical loss'* within the meaning of the [Coverage C section of the] policy."] [emphasis added]; *Mellin v. Northern Sec. Ins. Co.*, 167 N.H. 544, 548 (2015) ["'Physical loss' need not be read to

15  include only tangible changes to the property that can be seen or touched, but can also encompass changes that are perceived by the sense of smell"; thus, strong cat odor *inside the*

16  *insured condo* was deemed a physical loss] [emphasis added]; *Sentinel Mgmt. Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296, 300-301 (Ct.App. Minn. 1997) [Released asbestos fibers

17  that have *contaminated a building* may qualify as physical loss to property, subject to the degree of contamination, even if it may not result in tangible injury to the physical structure of a

18  building] [emphasis added]; *Essex v. BloomSouth Flooring Corp.*, 562 F.3d 399, 406 (1st Cir. 2009) [An "unpleasant odor can constitute physical injury to property under Massachusetts law,

19  and also that allegations that *an unwanted odor permeated the building* and resulted in a loss of use of the building are reasonably susceptible to an interpretation that physical injury to property

20  has been claimed."] [emphasis added]; *Matzner v. Seaco Ins. Co.*, Case No. 96-0498-B, 1998 Mass.Super.LEXIS 407, *13  (Mass. Cmmw. August 1, 1998) [Carbon monoxide *contamination*

21  *within the insured building* constitutes a "direct physical loss of or damage to" the insured building] [emphasis added]; *Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed.Appx. 823, 825-27

22  (3d Cir. 2005) [if e-coli *contamination of the well water of insured home* was to such an extent that functionality of the insured property was nearly eliminated or destroyed, or made useless or

23  uninhabitable, it could be deemed a physical loss] [emphasis added]; and *General Mills, Inc. v. Gold Medal Ins.,* 622 N.W.2d 147, 152, 2001 Minn.App, LEXIS 139 (Minn.Ct. App. 2001)

24  [under Minnesota law, "direct physical loss can exist without actual *destruction* of property or *structural* damage to property; it is sufficient that insured property is damaged in some way."

25  Thus, where government deemed a cereal unfit for *sale due to the application of an unapproved pesticide*, the insured food products were deemed physically damaged].)

26

27

28

These authorities have no application in this case where plaintiffs stipulate that there has been no *physical* harm to their mobile homes, and claim only that they are entitled to coverage because they could no longer use the mobile homes as residences within the Park due to damage to the surrounding Park, government orders prohibiting occupancy, and the Parks subsequent closure. None of those matters physically damaged plaintiffs' mobile homes, and thus there is no coverage.

Plaintiffs remaining foreign cases are even less persuasive, as they stand for positions that have been directly rejected by California case law or do not even discuss "physical loss to" covered property. For example, plaintiffs cite *Murray v. State Farm Fire & Cas. Co.*, 203 W.Va. 477, 493, 509 S.Ed.2d 1 (1998) for the proposition that the threat of a rockslide, without physical damage to the insured residence, was sufficient to establish "a physical loss." However, it is well established in this state that loss of function, utility, or value without "distinct, demonstrable, physical alteration" of the covered property does not trigger the coverage plaintiff here seeks. (*MRI Healthcare Ctr.*, *supra*, 187 Cal.App.4th at 779 [MRI machine rendered inoperable by power-down, yet undamaged, was not covered]; *Ward, supra,* 114 Cal.App.4th at 556-557 [loss of data did not qualify as "direct physical loss or damage" without any physical alteration of the computers or storage media].)[8]

Plaintiffs cite *American Guarantee & Liability Ins. Co. v. Ingram Micro., Inc.,* Case No. CIV99-185 TUC ACM, 2000 U.S. Dist. LEXIS 7299, *7 (D. Ariz. April 18, 2000) for the proposition that loss of access, use or functionality to computer data due to a power outage, as opposed to physical damage to the computer, was deemed a physical loss. However, California has expressly found

---

[8] Moreover, even if the rule of Virginia's *Murray* case was considered in California, despite its apparent stretching of the "physical loss to" requirement beyond its settled meaning, to include imminent threats of certain physical loss due to covered perils in the future, there was no such imminent threat to plaintiffs' property after the fire was put out without damaging their homes.

that such loss of functionality of undamaged physical property is not a "physical loss to" the covered property.  (*Ward, supra,* 114 Cal.App.4th at 556-557 [loss of data without damage to computers is not covered].)

Plaintiff's reliance on the New Jersey case of *Wakenfern Food Corp. v. Liberty Mut. Fire Ins. Co.*, 406 N.J. Super. 524, 968 A.2d 724, is also misplaced. The *Wakenfern* court found coverage for consequential damages from power failures, under a policy covering the same when caused by "physical damage" to third-party power facilities, because there was "physical damages" thereto, including apparently transmission line failures from inadequately pruned trees. (*Id.* at 532-540 [one "major cause" of the blackout was "failure to manage tree growth along transmission-line[s]," and the triggering of breakers in the system; "the electrical grid was 'physically damaged' because, due to a physical incident or series of incidents, the grid and its component[s]" could not deliver electricity].)

California law is clear that, under standard fire insurance policy terms like Foremost's, the inability to use covered property deemed uninhabitable due to damage to *uninsured* property is simply not the same as direct "physical loss to" covered property.  None of the cases cited by plaintiffs change that. Notwithstanding any loss of functionality or detrimental economic impacts, under the Foremost policies and California law, absent tangible, physical damage to the covered property itself, there is no coverage.

## IV.   GOVERNMENT ACTION EXCLUSION & CAUSATION

Because plaintiffs cannot establish that their claim falls within the basic scope of Coverage A, Foremost need not address any potential policy exclusions that would bar coverage.  (*Intel. Corp. v. Hartford Acc. & Indem. Co., supra,* 952 F.2d at 1558 [*If and after* an insured has established that the claim falls within the "basic coverage" of the policy, the insurer has the burden to establish an exception to coverage].)  However, as plaintiffs have raised Foremost's "government action" exclusion, Foremost will add that, while this exclusion may have had some

applicability to plaintiff's loss-of-use claims, those benefits were ultimately paid in full, and in all events there were no further coverage benefits due.

The Foremost policies exclude coverage for:  "Loss of or to any property caused by, consisting of or increased by the enforcement of any governmental requirement regulating . . . occupancy . . .."  (Fact 5, *e.g.*, Exh. 1 at FPCCRI 815.) There is an exception to this exclusion for loss "arising out of a government action to prevent the spread of fire provided that a loss caused by fire would otherwise be insured by this policy."  (*Id*.)

The parties agree that residential occupancy of the Park and plaintiffs' homes was prohibited by public agencies due to the destruction of the Park's utilities, and that plaintiffs' homes were not damaged by a public agency or anything else.

Since Coverage A does not apply unless there is a "physical loss *to*" – *i.e.,* actual, tangible damage to – the mobile homes, and plaintiffs stipulate that there was no such damage, no coverage exists for plaintiffs' claims under Coverage A in the first instance.  Therefore, the court need not reach the government action exclusion to determine this motion or whether it might apply to an otherwise covered loss.

The exclusion may have applied under Coverage D to the inability to *use* undamaged property due to government orders prompted by damage to neighboring property, for which loss of use benefits expressly end after two weeks. (Exh. 1 at FPCRI 812.)  But ultimately Foremost paid all plaintiffs all loss-of-use benefits to the limits of each policy, mooting that issue for any Coverage D claim.

Finally, whether or not the Fire or the government orders against occupancy was the "efficient proximate cause" of plaintiffs' initial inability to use their homes, the reasons plaintiffs were ultimately displaced from their homes were the Park's decision to close, rather than to rebuild, and plaintiffs' decisions to sell or

-14-

surrender their homes as the Park was closing.[9]  Those decisions turned on the unique finances and circumstances of the decision-makers having nothing to do with insurance coverage.  None of those decisions constituted "direct, sudden and accidental physical loss to" covered property.[10]

## V.    CONCLUSION

Despite plaintiffs' desire to transform a loss of use claim into a property damage claim, the language of the Foremost policies and California law make it clear that there must be "direct…physical loss to" covered property in order for there to be coverage.  Plaintiffs stipulate that there was no physical damage to the subject mobile homes.  Therefore, plaintiffs are not entitled to further coverage benefits under Foremost's policies, and their motion should be denied.

---

[9] *See  State Farm Fire & Casualty Co. v. Von Der Leith*, 54 Cal.3d 1123, 11313-1132 (1991) ("When a loss is caused by a combination of covered and specifically excluded risks, the loss is covered if the covered risk was the efficient proximate cause of the loss," but "the loss is not covered if the covered risk was only a remote cause of the loss, or the excluded risk was the efficient proximate, or predominant cause." [Citations omitted.]).)

[10] *See MRI Healthcare, supra*, 187 Cal.App.4th at 779 ["The word 'direct' used in conjunction with the word 'physical' indicates the change in the insured property must occur by the action of the fortuitous event triggering coverage.  In this sense, 'direct' means '`[w]ithout intervening persons, conditions, or agencies; immediate.'"] [internal citations omitted]; *Shell Oil Co. v. Winterthur Swiss Ins. Co.*,12 Cal.App.4th 715, 755 (1993) [the term "sudden" means just that: the word "necessarily contains a temporal element in addition to its connotation of the unexpected"]; *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.*, 51 Cal.2d 558, 563-564 (1959) *and  Delgado v. Interinsurance Exchange of Automobile Club of Southern California*, 47 Cal.4th 302, 311-312 (2009) ["an in injury-producing event is not an 'accident' within the policy's coverage language when all the acts, the manner in which they were done, and the objective accomplished occurred as intended by the actor"].)  Thus, the physical loss to covered property must occur rapidly, unexpectedly, and not be the intended result of an actor. Neither the Park's decision to close, nor the plaintiffs' decisions to sell, meet any of those criteria.

Moreover, the agency orders at issue *do* relate to "occupancy" of plaintiffs' homes, therefore any losses plaintiffs might have suffered as a result would be excluded.  Also, the exception to the exclusion plainly applies when public officers *damage or destroy* covered property to save other property, not when they successfully *save* covered property in the act of saving other property. But since there was no damage to plaintiffs' property, and thus no coverage in the first instance, and any subsequent losses were caused by intervening, non-accidental causes, there is no coverage regardless of the "government action" exclusion.

1   Dated:  October 21, 2020        DEMLER, ARMSTRONG & ROWLAND, LLP

By: _____
    John R. Brydon
    Paul A. Peters
    Angela Martin
    Attorneys for Defendant
    FOREMOST INSURANCE COMPANY
    GRAND RAPIDS, MICHIGAN and
    FOREMOST PROPERTY AND
    CASUALTY INSURANCE COMPANY

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

Patricia Crisco, et al. vs. Foremost Insurance Company, et al.
Sonoma County Superior Court Action No. SCV-265307
United States District Court for the Northern District of
California Case No. 4:19-cv-07320

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and not a party to the within action; my business address is 101 Montgomery Street, Suite 1800, San Francisco, California 94104.

On October 21, 2020, I served the foregoing document(s) described as follows:

**DEFENDANTS' OPPOSITION TO PLAINTIFFS MOTION FOR PARTIAL SUMMMARY JUDGMENT**

on the interested parties in this action by placing the copies thereof enclosed in sealed envelopes addressed as follows:

Guy O. Kornblum, Esq.
Yaelle E. Shaham, Esq.
Mukesh Advani
GUY KORNBLUM, A PROFESSIONAL LAW
CORPORATION
1388 Sutter Street, Suite 805
San Francisco, CA  94109
Email:  gkornblum@kornblumlaw.com
         yshaham@kornblumlaw.com
         madvani@kornblumlaw.com


Telephone:  (415) 440-7800
Facsimile:   (415) 440-7898


Kendall M. Jarvis, Esq.
LEGAL AID OF SONOMA COUNTY
144 South E Street, Suite 100
Santa Rosa, CA  95403
Email:  kjarvis@legalaidsc.com
Telephone:  (707) 308-2513

*Attorneys for Plaintiffs*

XX   ONLY BY ELECTRONIC TRANSMISSION. Only by emailing the document(s) to the persons at the e-mail address(es).  This is necessitated during the declared National Emergency due to the Coronavirus (COVID-19) pandemic because this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.  No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission. We will provide a physical copy, upon request only, when we return to the office at the conclusion of the national emergency.

4845-0343-1850, v. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on October 21, 2020, at San Francisco, California.

_____

Michelle Bonilla

4845-0343-1850, v. 1